**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                     Case No. 20-20237

SHIMAR THOMPKINS,

        Defendant.
_____/

**OPINION AND ORDER OVERRULING DEFENDANT'S OBJECTION TO THE PRESENTENCE REPORT AND SUSTAINING THE GOVERNMENT'S OBJECTION TO THE PRESENTENCE REPORT**

Defendant Shimar Thompkins was charged with receiving a firearm while under indictment, 18 U.S.C. §§ 922(n), 924(a)(1)(D), and possessing a stolen firearm, 18 U.S.C. §§ 922(j), 924(a)(2). (ECF No. 13.) On December 8, 2020, he pleaded guilty to both counts.

After the Probation Department issued a Presentence Report ("PSR"), both the government and Defendant filed an objection to its findings. (*See* ECF No. 31.) The matter has been thoroughly briefed. (ECF Nos. 28, 29, 32, 33.) For the reasons provided below, the court will overrule Defendant's objection to the PSR and will sustain the government's objection.

## I. BACKGROUND

On March 27, 2017, at the age of 17, Defendant was arrested and charged with third degree home invasion and conspiracy to commit third degree home invasion. (PSR § 37.) He assisted a criminal episode by breaking into a home in February 2017 from

which property was stolen, valued at $12,500.00. (*Id.*) Instead of participating in a traditional criminal adjudication, Defendant was directed into a diversion system created by the State of Michigan to allow for offenders under the age of 21 to remove criminal convictions from their records. Michigan's Holmes Youthful Trainee Act ("HYTA"), Mich. Comp. Laws §§ 762.11-16, established the diversionary system:

> [HYTA] provides that "if an individual pleads guilty to a criminal offense, committed on or after the individual's seventeenth birthday but before his or her twenty-first birthday, the court of record having jurisdiction of the criminal offense may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee." Mich. Comp. Laws § 762.11(1). Further, "If consideration of an individual as a youthful trainee is not terminated and the status of youthful trainee is not revoked as provided in section 12 of this chapter, upon final release of the individual from the status as youthful trainee, the court shall discharge the individual and dismiss the proceedings." Mich. Comp. Laws § 762.14(1) (footnote omitted). Moreover, "[a]n assignment of an individual to the status of youthful trainee as provided in this chapter is not a conviction for a crime and . . . the individual assigned to the status of youthful trainee shall not suffer a civil disability or loss of right or privilege following his or her release from that status because of his or her assignment as a youthful trainee." Mich. Comp. Laws § 762.14(2).

*Uritsky v. Gonzales*, 399 F.3d 728, 730 (6th Cir. 2005). The court overseeing a trainee under HYTA "may, at any time, terminate its consideration of the individual as a youthful trainee or, once having assigned the individual to the status of a youthful trainee, may at its discretion revoke that status any time before the individual's final release." Mich. Comp. Laws § 762.12(1). The court must revoke trainee status if an offender pleads guilty or is convicted of certain crimes, such as "[a] major controlled substance offense" or "[a] firearm offense." Mich. Comp. Laws § 762.12(2).

Following HYTA rules, Defendant pleaded guilty to the charges arising from his March 2017 arrest. (PSR § 37.) He was sentenced to two years of probation, 180 days

of custody, and $12,500.00 in restitution. (*Id.*) Between July 2017 and December 2019, Defendant twice pleaded guilty to violating his HYTA probation and twice failed to appear for probation violation sentencing. (*Id.*) Nonetheless, his HYTA status was continued until he was arrested for the instant offenses in March 2020.

On July 5, 2017, Defendant was arrested and charged with a second offense, assaulting/resisting/obstructing a police officer. (PSR § 38.) Police officers were called to investigate allegations that Defendant had assaulted a woman with whom he was in a relationship. (*Id.*) After making contact with Defendant, he was arrested and placed in a patrol vehicle. Subsequently, Defendant struck his head against the patrol vehicle shield, the officers opened the rear door to stop him from hitting his head, and Defendant exited the vehicle and used his shoulder to strike an officer in the chest. (*Id.*) Police restrained Defendant using pepper spray. (*Id.*) Defendant pleaded guilty to the charged offense and was placed again into the HYTA program. (*Id.*)

On May 7, 2018, Defendant was arrested and charged with his third offense, assault with intent to rob while unarmed and assaulting/resisting/obstructing a police officer. (PSR § 39.) In a grocery store, Defendant reached out and grabbed a victim's gold necklace which the victim had been wearing. (*Id.*) After ripping the necklace off the victim, Defendant fled the store. (*Id.*) Police eventually found him at a nearby residence, and Defendant ignored officer commands and fled the scene. (*Id.*) He was arrested soon thereafter. (*Id.*) On July 25, 2018, Defendant pleaded guilty to the charges arising from his May 2018 arrest and was for a third time granted the benefits of HYTA system designation. (*Id.*)

3

As a result of his second and third HYTA offenses, the state court sentenced him to two years of "HYTA prison." (*Id.*) He was released and placed on probation on October 24, 2019. (*Id.*)

On February 23, 2020, while on probation for his prior three HYTA convictions, Defendant participated in a home invasion in Warren, Michigan. (PSR §§ 9-14.) Defendant admitted to police that he "agreed to break into the house" with several associates. (PSR § 14; ECF No. 33-2, PageID.279.) He stated that the associates "gave him $50 to open the window to the house for [the associates] so they could go inside." (PSR § 14; ECF No. 33-2, PageID.279.) In his statement to police, Defendant claimed that he merely opened the window but did not go inside the house. (PSR § 14; ECF No. 33-2, PageID.279.) After conducting forensic analysis, police confirmed that Defendant's fingerprint matched a fingerprint left on "the window at the point of entry." (ECF No. 33-3, PageID.280.) Defendant's associate who was with Defendant when the home invasion occurred also gave a statement to police. The associate stated that Defendant and another individual "decided to break into [the] house" and Defendant, along with the other individual, "entered the home and stole several guns along with PlayStations and some games." (ECF No. 33-2, PageID.279.) Among the items stolen during the home invasion were six firearms registered to the homeowner, including a Llama 1911 .45 caliber pistol. (PSR § 9.)

Less than a week after the home invasion, on March 4, 2020, Defendant posted several videos on his Instagram social media page depicting him brandishing a Llama 1911 .45 caliber pistol, the same model of firearm stolen from the Warren house on February 23, 2020. (PSR §§ 10-11.) At his plea hearing on December 8, 2020,

4

Defendant agreed that the firearm in his Instagram videos was stolen from the Warren residence and, at the time he possessed the firearm, he knew it had been stolen.

Defendant was arrested and federally charged with receiving a firearm while under indictment and possessing a stolen firearm. (ECF No. 13.) On December 8, 2020, he pleaded guilty to both offenses and now awaits sentencing.

## II. DISCUSSION

Both the government and Defendant objected to the PSR. Defendant filed one objection arguing that an enhancement under U.S.S.G. § 2K2.1(b)(6)(B) for "possess[ing] [a] firearm or ammunition in connection with another felony offense" is not applicable. (ECF No. 32, PageID.256-62; ECF No. 31, PageID.254-55.) The government filed an objection arguing that an enhancement under U.S.S.G. § 2K2.1(a)(4)(A) for "committ[ing] any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense" is applicable. (ECF No. 28, PageID.230-32; ECF No. 31, PageID.252-53.) In both cases, "the government bears the burden of proving that an enhancement applies by a preponderance of the evidence." *United States v. Bourquin*, 966 F.3d 428, 432 (6th Cir. 2020). The court will address the two objections in turn.

### A. Defendant's Objection to Applying a U.S.S.G. § 2K2.1(b)(6)(B) Enhancement

Defendant states that, because he did not possess .45 caliber pistol stolen from the Warren home "in connection with another felony offense," the court cannot apply the sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B). He cites the Sixth Circuit decision *United States v. Sanders* for support. 162 F.3d 396 (6th Cir. 1998). In *Sanders*, a defendant committed a "burglary of [a] pawnshop" and stole "both firearms and non-

5

firearms." *Id.* at 399-400. As a result of his possession of illegal firearms while robbing the pawnshop, the defendant was convicted of knowingly transporting stolen firearms and being a felon in possession of firearms. *Id.* at 397. The Sixth Circuit noted that there was "no allegation that [the defendant] possessed any firearms when he entered the pawnshop" or "utilized any of the stolen firearms to commit any crimes after the theft." *Id.* at 399-400. Because there was not a "separation of time between the offense of conviction and the other felony offense, or a distinction of conduct between that occurring in the offense of conviction and the other felony offense," *id* at 400, the sentencing enhancement for possessing a firearm "in connection with another felony offense" did not apply. U.S.S.G. § 2K2.1(b)(6)(B). In the *Sanders* decision, the Sixth Circuit recognized that the Fifth Circuit in *United States v. Armstead*, 114 F.3d 504 (5th Cir. 1997) held that a § 2K2.1(b)(6)(B) enhancement was appropriate in a "similar fact situation." *Sanders*, 162 F.3d at 401. Nonetheless, the Sixth Circuit declined to follow the Fifth Circuit's reasoning. *Id.* at 401.

In 2006, the U.S. Sentencing Commission modified the Application Notes for U.S.S.G. § 2K2.1(b)(6)(B). To "address[] a circuit split," the Commission indicated in Application Note 14(b) of § 2K2.1(b)(6)(B) that § 2K2.1(b)(6)(B) applies to "a defendant who, during the course of a burglary, finds and takes a firearm, even if the defendant did not engage in any other conduct with that firearm during the course of the burglary." U.S.S.G. § 2K2.1(b)(6)(B) cmt. n. 14(B). The U.S. Sentencing Commission's Application Notes "deserve[] the deference given to an agency's interpretation of its regulations," and Defendant does not argue that Application Note 14(b) is unreasonable or is otherwise invalid. *United States v. Riccardi*, 989 F.3d 476, 484 (6th Cir. 2021). Instead,

he argues that, under *Sanders*, there was no "separation of time" or "distinction of conduct" between his possession of the .45 caliber pistol and "another felony offense." *Sanders*, 162 F.3d at 400; U.S.S.G. § 2K2.1(b)(6)(B). (ECF No. 32, PageID.258-59.) Thus, according to Defendant, § § 2K2.1(b)(6)(B) is not applicable. The court disagrees.

The court finds that Defendant stole the .45 caliber pistol during the February 23, 2020, home invasion. Defendant possessed the pistol "in connection with another felony offense," U.S.S.G. § 2K2.1(b)(6)(B), when, "during the course of a burglary, [he found] and [took] [the] firearm." U.S.S.G. § 2K2.1(b)(6)(B) cmt. n. 14(B). Several categories of evidence support this conclusion. First, a review of Defendant's criminal history demonstrates that he has a willingness and ability to engage in crimes of theft. In August 2016, Defendant was convicted as a juvenile for larceny when he stole property from an automobile. (PSR § 36.) In February 2017, Defendant committed a home invasion and stole properly and cash totaling $12,500.00, and in May 2018, he committed an assault with intent to rob when he ripped a gold neckless off a shopper at a grocery store. (PSR §§ 37, 39.) Defendant was released from prison for his HYTA offenses in October 2019, and he committed the instant offenses in March 2020. (PSR §§ 38, 11-14.)

Second, Defendant agreed at his plea hearing that he assisted in the Warren burglary, in which six firearms, including the .45 caliber pistol underlying the instant offenses, were stolen. (*See* PSR § 9.) He agreed that his fingerprint was on a window at the point of entry and that he opened the window intentionally to facilitate the burglary. (*See also* ECF No. 33-3, PageID.280 (forensic report concluding that Defendant's fingerprint was on the window "at the point of entry").)

7

Third, statements made to police by Defendant and his associate indicate that Defendant met up with other individuals and they collectively "agreed" to break into the house." (ECF No. 33-2, PageID.279.) Defendant's associate stated that Defendant and another individual "decided" to break into the house. (*Id*.) Further, the associate affirmatively asserted that Defendant "entered the home and stole several guns." (*Id.*)

Fourth, less than a week after the home invasion, Defendant posted several videos on Instagram depicting him holding the .45 caliber pistol stolen during the home invasion. (PSR §§ 10-11.) Records of Defendant's Instagram message history show that in the week following the home invasion, he attempted to sell the weapon. (ECF No. 33-5.) He asked another individual if the individual was "tryna buy this 45 1911 llama [sic]." (*Id.*, PageID.284.)

Defendant asserts that "[i]t is uncontested [that he] did not enter the house or steal the gun from the house." (ECF No. 32, PageID.257.) It seems to the court, however, to be thoroughly contested, mainly by acknowledged facts and common-sense inferences drawn from the facts. Moreover, Defendant fails to cite a government concession of this point. In the government's briefing, it indicates that "one of [Defendant's] confederates . . . stated that [Defendant] entered the home and stole several guns." (ECF No. 33, PageID.268.)

Reviewing the available evidence in the record, court finds that the government has proven by a preponderance that Defendant participated in the February 23, 2020, home invasion during which the Llama 1911 .45 caliber pistol was stolen. *Bourquin*, 966 F.3d at 432; U.S.S.G. § 2K2.1(b)(6)(B) cmt. n. 14(B). Defendant does not contest that Michigan's offense of home invasion "is the equivalent of the enumerated offense of

burglary of a dwelling." *United States v. Gibbs*, 626 F.3d 344, 353 (6th Cir. 2010); *see also United States v. Quarles*, 850 F.3d 836 (6th Cir. 2017, *aff'd*, 139 S. Ct. 1872 (2019) (holding that "Michigan's crime of third-degree home invasion is categorically equivalent to generic burglary"). Thus, under Application Note 14(B), "during the course of a burglary," Defendant "[found] and [took]" the .45 caliber pistol, and an enhancement under U.S.S.G. § 2K2.1(b)(6)(B) is warranted.

The Sixth Circuit was presented with a very similar factual scenario in *United States v. Hall*, 664 F. App'x 479 (2016), and in that case, the Sixth Circuit affirmed the application of a § 2K2.1(b)(6)(B) enhancement. In *Hall*, an unknown individual had broken into a barn and stolen hunting equipment, including a shotgun. *Id.* at 480. The defendant was found three months later attempting to sell the shotgun, and he was charged and convicted of being a felon in possession of a firearm. *Id.* at 480. The district court enhanced the defendant's sentence under U.S.S.G. § 2K2.1(b)(6)(B), and he appealed. *Id.* The Sixth Circuit first noted that, under Application Note 14(B), the enhancement applied when "a defendant who, during the course of a burglary, finds and takes a firearm." *Id.* at 482. The court reasoned that "no direct evidence tie[d] [the defendant] to the burglary of [the] barn," but the defendant "admitted[ly] possess[ed] . . . the stolen gun," he had a "record of prior thefts" and had stolen property from other individuals, and he possessed a pair of what appeared to be the barn owner's binoculars. *Id.* at 482-83. Thus, the court held that "the district court did not commit clear error in determining that the evidence made it more likely true than not that [the defendant] was involved in the theft of items from [the] barn." *Id.* at 483. The court

9

affirmed the sentencing enhancement under Application Note 14(B) and § 2K2.1(b)(6)(B).

Here, there is more evidence to connect Defendant to the theft of the pistol than there was evidence connecting the *Hall* defendant to the theft of the shotgun. Defendant admits having been at the Warren home when it was burglarized, and he agreed that he assisted the burglary by, at a minimum, opening a window at the point of entry. Statements from Defendant and his associate indicate that Defendant talked with others outside the home and developed a plan to burglarize it, and Defendant's associate stated that Defendant was inside the home and "stole several guns." (ECF No. 33-2, PageID.279.) Unlike the defendant in *Hall*, Defendant was not caught with other property taken from the prior burglary, but, like the defendant in *Hall*, Defendant was found in possession of the stolen firearm after the burglary and he had attempted to sell the firearm to other individuals. (PSR §§ 10-11; ECF No. 33-5.) Furthermore, like the defendant in *Hall*, Defendant has a substantial criminal history of theft crimes, and only a few years prior to the Warren burglary, Defendant was convicted of another home invasion. (PSR §§ 36, 37, 39.) The primary event that separated him from his first home invasion and the home invasion at issue here was his incarceration at "HYTA prison." (PSR §§ 37-39.) Application Note 14(B) is applicable, and an enhancement under § 2K2.1(b)(6)(B) is warranted.

Nonetheless, Defendant argues that, in *United States v. Kilgore*, 749 F.3d 463, 464 (6th Cir. 2014), the Sixth Circuit held that the standard under *Sanders*, 162 F.3d at 400, requiring a "separation of time" or a "distinction of conduct between that occurring in the offense of conviction and the other felony offense" under § 2K2.1(b)(6)(B), is still

10

applicable after the Sentencing Commission finalized Application Note 14(B). While the court in *Kilgore* did note that the Sixth Circuit "has not altered the *Sanders* interpretation of the 'another felony offense' enhancement," it held that Application Note 14(B) was not applicable in that case because "[the defendant] did not commit a burglary." 749 F.3d at 464. Unlike the defendant in *Kilgore*, Defendant does not contend that his actions, which included a home invasion and theft of firearms, did not constitute a "burglary" under Application Note 14(B). As explained above, Defendant admitted to assisting in a home invasion, and the record shows by a preponderance of the evidence that he burglarized the Warren house and stole the .45 caliber pistol. Thus, the reasoning in *Kilgore* is in this case not helpful.

Even if the U.S. Sentencing Commission had not issued Application Note 14(B) and the standard under *Sanders* was the only relevant law for the court to consider, an enhancement under § 2K2.1(b)(6)(B) would still be justified. There was a "separation of time between the offense of conviction and the other felony offense" and a "distinction of conduct between that occurring in the offense of conviction and the other felony offense." *Sanders*, 162 F.3d at 400. Unlike the defendant in *Sanders*, who was convicted of possessing illegal weapons when he stole "many valuables from [a] pawnshop," *id.* at 400, Defendant's convictions here were for possessing the .45 caliber pistol several days after the Warren home invasion when he posted at a separate location videos on Instagram that depicted him brandishing the weapon. Defendant did not plead guilty to possessing the firearm at any time during the home invasion underlying the § 2K2.1(b)(6)(B) enhancement. In fact, Defendant strongly opposes in briefing the finding that he "possessed a firearm, much less the stolen firearm, on the

night of the robbery." (ECF No. 32, PageID.256-57.) Thus, Defendant's later possession of the Llama 1911 .45 caliber pistol—on March 4, 2020, when he created the Instagram videos—was both separate in time and involved distinct conduct, *Sanders*, 162 F.3d at 400, in comparison to the burglary and the theft of the pistol on February 23, 2020.

The Sixth Circuit's recent decision in *United States v. Head* supports this conclusion. 845 F. App'x 421 (6th Cir. 2021). In *Head*, the defendant "broke into three gun stores and stole over seventy guns." *Id.* at 423. The defendant pleaded guilty to conspiring to commit theft of a federal firearms licensee, theft from a federal firearms licensee, possessing a stolen firearm, and possessing a firearm as a prohibited person. *Id.* The district court applied the § 2K2.1(b)(6)(B) enhancement, and the defendant appealed. *Id.* The defendant argued that *Sanders* precluded application of § 2K2.1(b)(6)(B) because "there [was] no other offense that was separated temporally or involved different conduct from the offense of conviction." *Id.* at 425. The Sixth Circuit rejected the defendant's argument and held that § 2K2.1(b)(6)(B) applied. The court reasoned that, although the defendant was convicted of possessing firearms after robbing a gun store in Ohio, he also possessed guns during the same criminal scheme after robbing a gun store in Kentucky six days later. *Id.* at 425-26. The defendant "[was] not charged with or convicted for burglarizing [the gun store in Kentucky]," and the court held that *Sanders* was not applicable. *Id.*

Like the defendant in *Head*, the other "felony offense" supporting a § 2K2.1(b)(6)(B) enhancement did not serve as a factual basis for the firearm offenses Defendant pleaded guilty to. Defendant pleaded guilty to possessing the .45 caliber pistol several days after the home invasion, and he denies possessing the firearm the

night of the home invasion. (ECF No. 32, PageID.256-57.) Just as the defendant in *Head* was not charged or convicted for possessing firearms during the Kentucky gun store robbery (which was part of the same "crime spree" as the Ohio gun store robbery), Defendant was not charged or convicted of possessing the Llama 1911 .45 caliber pistol as a result of the February 23, 2020, home invasion. Defendant's possession of the .45 caliber pistol the night of the home invasion was distinct conduct, separated in time from the March 4, 2020, Instagram videos, and an enhancement under § 2K2.1(b)(6)(B) is appropriate.

The court will overrule Defendant's objection and will accept the PSR's conclusion that an enhancement under U.S.S.G. § 2K2.1(b)(6)(B) is justified.

**B. The Government's Objection to Not Applying an Enhancement Under U.S.S.G. § 2K2.1(a)(4)(A)**

The government objects to the PSR's exclusion of a sentencing enhancement under U.S.S.G. § 2K2.1(a)(4)(A). Section 2K2.1(a)(4)(A) applies when "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense." Neither the Probation Department nor Defendant dispute that, given Defendant's criminal history, he has "committed [a] part of the instant offense subsequent" to committing a "crime of violence." U.S.S.G. § 2K2.1(a)(4)(A). Specifically, in May 2018, Defendant committed an assault with intent to rob while unarmed. (PSR § 39.) However, the Probation Department and Defendant contend that a § 2K2.1(a)(4)(A) enhancement is not applicable because he was sentenced under HYTA, and thus, his prior offenses are not "convictions" sufficient to trigger § 2K2.1(a)(4)(A). The court does not find the argument convincing, and it finds that a § 2K2.1(a)(4)(A) enhancement is warranted.

13

Defendant accurately notes that, under Michigan law, "[a]n assignment of an individual to the status of youthful trainee [under HYTA] is not a conviction for a crime." *Uritsky*, 399 F.3d at 730 (quoting Mich. Comp. Laws § 762.14(2)). However, it is well established that, when applying a federal sentence under the U.S.S.G., federal law, not Michigan law, applies. *See United States v. Rede-Mendez*, 680 F.3d 552, 555-56 (6th Cir. 2012) (noting that the legal interpretation of a U.S.S.G. provision for "crime[s] of violence" is a "question of federal law"); *United States v. Kirby*, 893 F.2d 867, 868 (6th Cir. 1990) (holding that "[f]ederal law, not [state] law, controls" the interpretation of the language "prior sentence" in a provision of the U.S.S.G.).

Further, the court notes that, although HYTA ensures that participants do not "suffer a civil disability or loss of right or privilege" because of their involvement with a HYTA proceeding, and participation in a HYTA proceeding is "closed to public inspection," HYTA offenses are still an important consideration for sentencing repeat offenders in the Michigan court system. Mich. Comp. Laws § 762.14(2), (4). All HYTA proceedings are still "open to [Michigan] courts . . . law enforcement personnel and . . . prosecuting attorneys," Mich. Comp. Laws § 762.14(4), and "[a]ssignment to youthful trainee status" under HYTA still counts toward criminal history scoring in Michigan. Mich. Comp. Laws § 777.50(4)(a)(i). In addition, "[a] guilty plea is a precondition of eligibility for the Michigan youthful trainee program." *United States v. Shor*, 549 F.3d 1075, 1078 (6th Cir. 2008) (citing Mich. Comp. Laws § 762.11). In a HYTA proceeding, the court accepts the guilty plea and has the authority to assign the defendant, depending on the offense, to probation or jail time. *See* Mich. Comp. Laws § 762.13. The court overseeing the HYTA proceeding has authority to "revoke [HYTA] status any

time before the individual's final release" and enter a judgment against the individual. Mich. Comp. Laws § 762.12.

Here, Defendant committed three HYTA-eligible offenses before committing the instant offenses. (PSR §§ 37-39.) In February 2017, Defendant committed a home invasion; in July 2017, he assaulted a police officer; and in May 2018, he assaulted a shopper at a grocery store. (*Id.*) Defendant twice pleaded guilty to violating his HYTA status, and twice failed to appear for probation violation sentencing, yet his HYTA status was continued. (PSR § 37.) After his third HYTA offense, he was sentenced to a term of incarceration in "HYTA prison." (PSR §§ 38-39.) Nonetheless, Defendant argues that he did not have a "conviction" under U.S.S.G. § 2K2.1(a)(4)(A) at the time of the instant offenses because his HYTA status had not been revoked.[1] (ECF No. 32, PageID.262.)

Given the characteristics of HYTA sentencing, which track closely to traditional criminal sentencing, the Sixth Circuit has repeatedly considered HYTA offenses "convictions" under the U.S.S.G. and federal law. In *United States v. Adams*, a defendant received a sentencing enhancement for having a "prior conviction for a felony drug offense that has become final." 622 F.3d 608, 609 (6th Cir. 2010). The defendant challenged the enhancement, arguing that the prior offense used to support the enhancement was a HYTA adjudication. *Id.* The Sixth Circuit noted that, under state law, HYTA assignment "is not a conviction for a crime," and "no formal judgment was entered" against the defendant for the prior offense. *Id.* at 611-12. Nonetheless, the court held that the defendant's "plea of guilty to a felony drug offense qualifies as a prior

---

[1] Defendant's HYTA status was revoked after he was indicted for the instant offenses. (PSR §§ 37-39.)

15

conviction for federal sentencing purposes when the defendant is assigned as a youthful trainee pursuant to the [H]YTA." *Id.* at 612. The court reasoned that, under Michigan law, a HYTA adjudication is counted toward an individual's criminal history, and the state court closed the HYTA case, allowing the defendant to appeal the decision after the defendant was indicted for the federal offense. *Id.* at 612-13.

Similarly, in *United States v. Neuhard*, a defendant received a sentencing enhancement for having "one prior conviction under the laws of any State" relating to a sexual abuse, sex trafficking, or child pornography. 770 F. App'x 251, 257 (6th Cir. 2019). The defendant argued that the enhancement did not apply because his prior offense was adjudicated under HYTA and "the state court . . . dismissed the proceedings against him without entering a judgment of conviction." *Id.* at 257. The Sixth Circuit reiterated the holding in *Adams* that "a YTA guilty plea qualifies as a prior conviction for federal sentencing purposes." *Id.* at 258. Despite the defendant's HYTA proceedings having concluded with a dismissal, and the sentencing enhancement requiring a "conviction *under the laws of [the] State*," the court held that the defendant's "[H]YTA guilty plea is a prior conviction" supporting the sentencing enhancement. *Id.* at 257-59 (emphasis added).

Like the defendant in *Adams*, at the time of his federal indictment, Defendant was still subject to HYTA oversight, and the state court had authority to "revoke" his HYTA status at "any time." Mich. Comp. Laws § 762.12. Defendant's prior offenses had not been dismissed without a judgment of guilty. In *Neuhard*, the defendant was in an even stronger position of having had the prior HYTA adjudication completely dismissed. The enhancements in this case, *Adams*, and *Neuhard* all required a prior "conviction."

U.S.S.G. § 2K2.1(a)(4)(A). However, the legal language of the enhancements in *Adams* and *Neuhard* were more favorable to the defendants compared to § 2K2.1(a)(4)(A) in this case. The enhancement in *Adams* required that the prior conviction "become final," 622 F.3d at 609, and the enhancement in *Neuhard* applied only if the defendant had a conviction "under the laws of [the] State." 770 F. App'x at 257. Nonetheless, both the *Adams* and *Neuhard* courts held that HYTA adjudications were prior "convictions" and sentencing enhancements were appropriate.

Defendant pleaded guilty to his HYTA offenses, Mich. Comp. Laws § 762.11, he was subject to state court sentences of probation and incarceration, Mich. Comp. Laws § 762.13, and, at the discretion of the state court, his HYTA status could be revoked at any time. Mich. Comp. Laws § 762.12. As the Sixth Circuit held in in *Adams* and *Neuhard*, Defendant's HYTA offenses qualify as "prior conviction[s]," and a sentencing enhancement under U.S.S.G. § 2K2.1(a)(4)(A) is justified.[2] *Adams*, 622 F.3d at 612; *Neuhard*, 770 F. App'x at 258.

---

[2] The Sixth Circuit has also held that diversionary adjudications in states other than Michigan qualify as "prior convictions" for sentencing in federal court. In *United States v. Pritchett*, the court reasoned that "a plea of guilty differs in purpose and effect from a mere admission or an extrajudicial confession; it is itself a conviction." 749 F.3d 417, 424-25 (6th Cir. 2014) (quotations removed). Therefore, the court held that an adjudication under Tennessee's diversionary statute qualified as a "conviction" for the purposes of a sentencing enhancement. *Id.* at 423-28. Like HYTA, the Tennessee statute "expressly provide[d] that there [was] no adjudication of guilty" but required the defendant to plead guilty and be "submitted to a period of probation, living under the threat of revocation and imprisonment were he found noncompliant." *Id.*; *see also United States v. Graham*, 622 F.3d 445, 459 n.15 (6th Cir. 2010) (quotations removed) (noting that "alternative sentencing statutes . . . [are] clearly not meant to provide [defendants subject to those statutes] with a technical legal advantage if, not having learned a lesson, they continue their criminal conduct").

Thus, the government's objection to the PSR's exclusion of an enhancement under U.S.S.G. § 2K2.1(a)(4)(A) will be sustained.

### III. CONCLUSION

Defendant possessed a firearm "in connection with another felony offense," and he committed the instant offenses "subsequent to sustaining one felony conviction of . . . a crime of violence." Thus, the court will apply sentencing enhancements under U.S.S.G. § 2K2.1(b)(6)(B) and U.S.S.G. § 2K2.1(a)(4)(A) respectively. Accordingly,

IT IS ORDERED that Defendant's objection to the application of a U.S.S.G. § 2K2.1(b)(6)(B) enhancement is OVERRULED.

IT IS FURTHER ORDERED that the government's objection to the non-application of a U.S.S.G. § 2K2.1(a)(4)(A) enhancement is SUSTAINED.

                                        s/Robert H. Cleland              /
                                        ROBERT H. CLELAND
                                        UNITED STATES DISTRICT JUDGE

Dated: June 21, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 21, 2021, by electronic and/or ordinary mail.

                                        s/Lisa Wagner                  /
                                        Case Manager and Deputy Clerk
                                        (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-20237.THOMPKINS.ObjectionstoPresentenceReport.RMK.RHC.2.docx